```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
   WILLIAM THOMPSON,                                        :
                                  Plaintiff,                :
                                                            :         14-CV-1043 (JPO)
                    -v-                                     :
                                                            :         OPINION AND ORDER
   GFI BROKERS LLC,                                         :
                                  Defendant.                :
                                                            :
----------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

    Plaintiff William Thompson brings this action against his former employer, Defendant GFI Brokers LLC ("GFI"), alleging breach of contract and violation of New York Labor Law, and seeking a declaration that a portion of his employment contract is void.  GFI moves to compel arbitration pursuant to the employment agreement it signed with Thompson and to dismiss the action under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*  Thompson moves for summary judgment.  For the reasons that follow, GFI's motion is granted and Thompson's motion is denied.

    At the commencement of his employment, GFI and Thompson signed an employment agreement.  That agreement was renewed yearly until Thompson left GFI in January of 2014. According to GFI, the agreement contains the following arbitration clause:

> The parties hereby agree that all claims, disputes or controversies ("Claims") arising under this Agreement or otherwise concerning in any way Thompson's employment, including, without limitation, Claims for wages or salary, severance or compensation; Claims for breach of any contract or covenant (express or implied) . . . shall be resolved exclusively through arbitration.  Such arbitration shall be conducted before, and in accordance with the arbitration rules of, the National Association of Securities Dealers ("NASD"), the New York Stock Exchange ("NYSE") or the National Futures Association ("NFA"), if the matter is eligible for such arbitration and the NASD, NYSE or NFA, as the case may be, agrees to arbitrate . . . .  If the matter is not eligible for arbitration before the NASD, NYSE or NFA, or other mandatory exclusive forum, the parties agree to

> submit any Claims to the exclusive jurisdiction of the United States District Court of the Southern District of New York or if such court lacks subject matter jurisdiction, to the jurisdiction of the Supreme Court of the State of New York, County of New York with respect to any Claims (whether or not any such party is otherwise subject to the jurisdiction or venue of such Court).

(Dkt. No. 9, Defendant's Memorandum of Law in Support of its Motion to Compel Arbitration, at 2 [hereinafter: "Defendant's Memo"] (emphases removed).)  Thompson does not dispute that this is an accurate excerpt of the agreement.  Nor does he dispute that his claims fall within the word "[c]laims" in the agreement and are, therefore, subject to arbitration if the arbitration clause is enforced.  He does not dispute that the parties could arbitrate this dispute before the NFA.  He contends only that the clause is invalid due to an ambiguity (or mistake) in the phrase "or other mandatory exclusive forum" because NFA provides for elective arbitration in its own internal rules.

Whether the parties agreed to arbitrate is a question of state law, *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002), and where a party resisting arbitration challenges the existence or validity of an arbitration clause, ordinary contract law governs.  *E.g.*, *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 73 (2d Cir. 1997); *Bar-Ayal v. Time Warner Cable Inc.*, 03-CV-9905, 2006 WL 2990032, at *2 (S.D.N.Y. Oct. 16, 2006).  Thus, the Court will look to New York contract law to determine whether the agreement is valid and whether it indicates that the parties contracted to arbitrate their disputes.

Thompson argues that several contract theories invalidate the arbitration clause, all of which are premised on the fact that the agreement implies that NFA is an exclusive forum and that it is not, in fact, an exclusive forum as reflected in its governing rules.  Thompson argues that this tension invalidates the clause via four "legal avenues." (Dkt. No. 22, Plaintiff's Memorandum of Law in Opposition, at 7 [hereinafter: "Plaintiff's Memo"].)  First, Thompson "relies on governing rules of contract construction, including the doctrine of *contra proferentum*,

upon which he asks the Court to construe the equivocal provision, firstly by striving to harmonize words in tension, and if that is not possible, to resolve the ambiguity against the drafter." (*Id.*)  Second, he contends that the agreement is voidable on the grounds of mutual mistake.  (*Id.*)  Third, he "seeks a reformation of the provision so that the parties' rights and obligations will not undermine their in-common wrong understanding: that the parties were agreeing to arbitrate disputes if such arbitration is required." (*Id.*)  Finally, he contends that GFI, as drafter of the arbitration provision, "should not in equity be entitled to the remedy of specific performance as if the provision did not contain the fundamental mistake." (*Id.*)

All four avenues rely on the assumption that the quoted language from the arbitration agreement assumes that NFA's rules are what make it a "mandatory exclusive" forum.  But the plain meaning of the arbitration agreement itself makes the chosen arbitral forum exclusive.  The agreement reads "all . . . Claims arising under this Agreement or otherwise concerning in any way Thompson's employment . . . shall be resolved *exclusively* through arbitration." (Defendant's Memo, at 2 (emphasis added).)  When the agreement refers to "other mandatory exclusive" fora, it means that if one of the specified fora is unavailable, and another forum is available, the parties *must* use it ("mandatory") and may use *only* it ("exclusive").

Thompson seeks to avoid this reading by noting that as a general practice, brokers—GFI is a broker—often include arbitration clauses in agreements that would be subject to arbitration anyway because both parties are members of financial self-regulatory organizations that compel arbitration in all cases.  (Plaintiff's Memo, at 9 n.4.)  Thompson reads the words "mandatory [and] exclusive" to mean that the agreement compels arbitration only if arbitration would be compelled by the organizations' rules anyway.  Thus, Thompson urges, his preferred reading does not render the arbitration clause superfluous because plenty of brokers write contracts this way—the belt to the financial organizations' suspenders, more or less.  Although that may be

correct, its relevance is unclear.  The phrase "all . . . Claims arising under this Agreement or otherwise concerning in any way Thompson's employment . . . shall be resolved *exclusively* through arbitration" is unambiguous and, therefore, the fact that Thompson's competing reading does not render the whole agreement superfluous is insufficient to invalidate the contract as it is written.

To invalidate the agreement on any of the legal avenues he proposes, Thompson must at least show that the phrase "other mandatory exclusive forum" represents a misunderstanding of the rules of the NFA.  But given the plain meaning of the agreement, there is no reason to believe that is so.

GFI's motion to compel arbitration is hereby GRANTED.  The action is, therefore, dismissed.[1]  Thompson's motion for summary judgment is DENIED as moot.

The Clerk of the Court is directed to close the motions at docket numbers 7 and 11 and to close the case.

SO ORDERED.

Dated: October 27, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[1] Neither party here has requested a stay of the proceedings pending arbitration.  Therefore, this Court does not need to address the difficult question of whether or not it is empowered to dismiss the action in the face of a request that it be stayed pursuant to 9 U.S.C. § 3.  *See, e.g.*, Angelina M. Petti, Note, *Judicial Enforcement of Arbitration Agreements: The Stay-Dismissal Dichotomy of FAA Section 3*, 34 HOFSTRA L. REV. 565, 568 (2005).